*Oze R. Horton,* for plaintiff in error.

22599, 22600.   CITY OF ATLANTA et al. v. HENRY GRADY
HOTEL CORPORATION et al.; and vice versa.

22601.   HENRY GRADY HOTEL CORPORATION et al. v.
CITY OF ATLANTA et al.

SUBMITTED AUGUST 19, 1964—DECIDED SEPTEMBER 16, 1964—
REHEARING DENIED SEPTEMBER 28, 1964.

*Henry L. Bowden, Lewis R. Slaton, John E. Dougherty, McCord & Cooper, Thomas F. Choyce,* for City of Atlanta et al.

*Edward B. Liles, B. N. Nightingale,* for parties at interest not parties to record.

*Robert L. Mitchell,* for Henry Grady Hotel Corp. et al.

GRICE, Justice. Rulings to be reviewed here emanate from a three count petition attacking a municipality's special license tax upon liquor retailers, the annual license fee it charges such retailers, and a contract between it and a particular liquor retailer.

The petition was filed in the Superior Court of Fulton County by the Henry Grady Hotel Corporation and Emory Crenshaw, its president and managing director, against the City of Atlanta and Dobbs Houses, Inc.

Count 1 attacks as illegal the city's special license tax upon retailers of $1.44 per case of spirituous liquors purchased. It recites, besides other grounds, that the city is not authorized to impose any license fee or tax upon retailers except an annual license fee payable in advance. The trial court overruled the city's general demurrer to this count and restrained it from collecting the tax, but granted a supersedeas pending this review. The city's bill of exceptions complaining of this ruling constitutes case number 22599.

Count 2 charges that the city's annual license fee required of retailers, to wit, $1,000 plus one percent of the gross sales of the previous year in excess of $100,000, is illegal in that it is not an annual license fee payable in advance. The trial court sustained the city's general demurrer to this count. To this ruling the corporation and its officer excepted by cross bill of exceptions in case number 22600, and also by a separate bill of exceptions in case number 22601.

Count 3 seeks to invalidate, as not authorized by law, an agreement whereby the city granted to Dobbs Houses, Inc., the exclusive right to sell liquor upon its airport property for a fixed rental togther with a percentage of its gross receipts. The trial court sustained the city's general demurrer to this count.

The corporation and its officer also excepted to this ruling in their cross and separate bills of exceptions referred to above.

■■ Count 1, attacking the special license tax of $1.44 per case of spirituous liquors purchased, makes the following material allegations.

The petitioners hold both State and City of Atlanta retail liquor licenses for the year 1964.

In 1951 the city enacted an ordinance which, in material part, provides as follows: "No . . . liquors which may be manufactured or sold legally in this state shall be manufactured or sold at wholesale or retail in the City of Atlanta, except under a license granted . . . as hereinafter provided . . . The license fees shall be as follows . . . Special license tax imposed and levied upon retail sales of . . . spirituous liquors. The amount of the license tax to be computed on the following basis: . . . m. $1.44 per case of spirituous liquors."

At all times since the enactment of this ordinance the city has required petitioners to pay this special license tax. Also, pursuant to other provisions of such ordinance and the regulations of the State Revenue Commissioner, petitioners are required to make their purchases from certain wholesale dealers and to pay this special license tax to them on a cash-on-delivery basis.

Petitioners have a substantial investment in their business and if such special license tax were not paid as aforesaid no liquors could be purchased and their business would be destroyed.

Such special license tax is invalid in that it is not authorized by the city's charter or by the laws of this State. The Revenue Tax Act to Legalize and Control Alcoholic Beverages and Liquors (Ga. L. 1937-38, Ex. Sess., p. 103 et seq.; Code Ann. § 58-1001 et seq.) empowers a municipal corporation to require of retail liquor dealers only an annual license fee payable in advance. The special license tax of $1.44 per case, payable cash-on-delivery, is not such an annual license fee payable in advance and is therefore unauthorized.

They allege inadequacy of remedy at law and irreparable injury. They pray for temporary and permanent restraint of the city from collecting such license tax, or any license tax

except an annual license fee payable in advance, and a declaration that the special license tax of $1.44 per case is null and void.

A determination of the issue thus made requires a reference to and construction of salient provisions of the Revenue Tax Act to Legalize and Control Alcoholic Beverages and Liquors (Ga. L. 1937-38, Ex. Sess., pp. 103 et seq.; *Code Ann.* §§ 58-1001 et seq.), hereinafter called the "Revenue Tax Act," which provides the terms and conditions under which liquors may be sold in this State.

This statute's only provision for the levying of fees on liquor retailers by municipal corporations is found in section 9(d) which provides: ". . . The annual licenses to be charged by a municipality . . . shall not be less than . . . two hundred fifty ($250.00) dollars for retailers, and nothing in this bill shall restrict the maximum amount to be charged or levied by . . . municipalities for licenses issued or granted to . . . retailers as defined in this Act. It is the purpose and intent of this paragraph to place no maximum limit or maximum amount that can be charged by municipalities . . . and if any . . . municipality now having a charter provision limiting the amount of license that can be charged upon any business such limitation shall not apply to licenses issued or granted under this Act." Ga. L. 1937-38, Ex. Sess., pp. 103, 112 (*Code Ann.* §58-1032).

Section 9 (g) of the same Act requires that "All licenses or license fees referred to in this section, shall be payable in advance . . ." Ga. L. 1937-38, supra (*Code Ann.* § 58-1038).

The legislative intent, as we construe these portions of this statute, was to authorize municipal corporations to issue, and charge for, licenses to sell spirituous liquors at retail, with no maximum limitation on the amount to be charged, but with the requirement that the licenses be annual ones and that the fees therefor be paid in advance. There is no authorization for any other levy on retailers by municipal corporations.

This brings us to the question: Is this special license tax of $1.44 per case of spirituous liquors imposed by the city and collected cash-on-delivery by the wholesaler such an "annual" li-

cense for retailers, "payable in advance," as is authorized by the statute?

In our view it is not.

We do not construe the statute's requirement of an annual license fee payable in advance to be satisfied by payments during the year as and when cash-on-delivery purchases by the retailer from the wholesaler take place.

In this connection, it is noteworthy that this special license tax is in addition to an annual license fee payable in advance also charged retailers by the city, the same being dealt with in Division 2.

That the requirement of the statute as to advance payment is applicable to municipal as well as State licenses is clear from the use of the word "all" in section 9 (g), supra.

Authority to impose the special license tax here is not supplied by section 9 (c) of such statute (Ga. L. 1937-38, Ex Sess., pp. 103, 111; *Code Ann.* § 58-1028), which recognizes the police power of a municipality to adopt reasonable rules and regulations to regulate the liquor business. That section has no reference to fees.

Nor is such authority afforded by the General Assembly's grant to the City of Atlanta of general charter power to levy a fee, charge, or tax on trades, businesses, etc. Ga. L. 1937, pp. 1502, 1503. Insofar as liquor is concerned, the city has only such authority as is given it by the Revenue Tax Act. Ga. L. 1937-38, supra.

For the foregoing reasons, we deem the trial court's overruling of the general demurrer to count 1 to be correct.

■ The judgment of the trial court upon which the city assigns error, besides overruling its general demurrer to count 1, temporarily restrained it from collecting the special license tax. However, nothing in that judgment, or elsewhere in the record, indicates that any evidence was heard. From all that appears this was a temporary restraining order instead of a temporary injunction. The city's bill of exceptions so classifies it. Temporary restraining orders not being reviewable, this portion of the assignment of error will not be considered. *Stark v. Waters,* 214 Ga. 597, 599 (106 SE2d 401).

■ Count 2, attacking the city's annual license fee as illegal, alleges in substance as follows.

Petitioners obtained city and State retail liquor licenses for the year 1964.

The City of Atlanta, on March 23, 1964, enacted an ordinance providing in material part: "The annual license fee for the privilege of engaging in the business of selling spirituous liquors at retail as described herein shall be as follows: (a) $1,000.00 per annum plus an amount equal to 1 per cent of the gross sales of the previous year in excess of $100,000.00 . . . this section applies to all renewals of licenses effective January 1, 1965."

By enacting such ordinance the city is attempting to compel petitioners to pay an illegal fee of one percent of its gross sales in excess of $100,000 in order to continue in business or procure a license for the year 1965, contrary to the Revenue Tax Act which provides that municipalities can charge only an annual license fee payable in advance.

Petitioners have made substantial investments in their business in reliance on the provisions of such Revenue Tax Act, and unless equity intervenes, will be compelled to pay the city the money which it is illegally demanding by said ordinance in order to continue their lawful business.

When they apply for their 1965 retail license petitioners intend to refuse to pay the said one percent of their gross sales or any other amount, except an annual license fee payable in advance. The city by enactment of this ordinance has announced its intention not to renew petitioners' license unless such illegal fee is paid. Petitioners will be irreparably injured unless equity intervenes, and they have no adequate remedy at law.

Their prayers include temporary and permanent restraint against the city's enforcement of the percentage of gross sales provisions of such ordinance, or the collection of any amount other than an annual license fee payable in advance, and that the ordinance provision as to percentage of gross sales be declared null and void.

This count poses this question: Is the city ordinance requiring "$1,000.00 per annum plus an amount equal to 1 per cent of the gross sales of the previous year in excess of $100,000.00" an an-

nual license fee payable in advance, as is authorized by the Revenue Tax Act?

In our opinion it is.

The Revenue Tax Act does not require that the fee for a retailer's license be a fixed sum. The only requirement as to amount is that it be not less than $250. In the ordinance under attack the percentage of gross sales portion of the fee is based on the previous year's sales, so that the amount required for that portion is ascertainable at the time for renewal of the license. Such amount, together with the fixed portion of $1,000, is thus an annual license fee payable entirely in advance. In this respect it differs significantly from the special license tax of $1.44 per case which was held void in count 1. That license tax was, by the express terms of the ordinance, necessarily payable during the year as and when the retailer made his purchases from the wholesaler.

Count 2 failed to show that the license ordinance attacked was void for any reason, and was therefore subject to the general demurrer lodged against it.

■ Count 3, charging the invalidity of an agreement between the city and a particular liquor retailer, makes the following allegations.

The corporate plaintiff operates a hotel in the City of Atlanta. The individual plaintiff is its president and managing director, and is a citizen and taxpayer of said city.

On or about January 1, 1964, the defendants city and Dobbs Houses, Inc., entered into a contract whereby Dobbs agreed to pay the city a percentage of its gross receipts for the exclusive right to sell liquor at retail upon the premises of the Atlanta Municipal Airport, which is owned and operated by the city. Petitioners do not have a copy of such contract and hence do not set it forth.

Pursuant to this contract Dobbs is operating a retail liquor store at such airport, and is dividing and sharing its profits with the city.

The city is without authority of law to engage in the retail liquor business, directly or indirectly, in competition with petitioners. Therefore, such contract is in violation of law, contrary

to the public policy of this State, without the city's charter powers, and is null and void.

The city is forbidden by the Revenue Tax Act to demand or receive from any retail liquor dealer any sum of money for the privilege of engaging in such business other than an annual license fee payable in advance.

Petitioners have no adequate remedy at law and will suffer irreparable injury unless equity intervenes to enjoin the city from engaging in the retail liquor business and to declare such contract null and void.

The prayers were for temporary and permanent injunction against the city demanding or receiving any sums of money for the privilege of engaging in the retail liquor business, except an annual license fee payable in advance, and for a declaration that such contract is null and void.

This count does not allege that the city has permitted Dobbs to operate as a retail liquor dealer without having obtained a license as required by the Revenue Tax Act. Thus it must be assumed that Dobbs holds a valid city license.

Rather, construed most strongly against the pleaders, as it must be on general demurrer, this count seeks to void an agreement wherein the city, in consideration of a percentage of the gross sales, leased to Dobbs a portion of its airport property for the conduct of a retail liquor business and agreed that it would not permit anyone else to conduct such a business there.

As we view it, this alleged agreement is subject to the attack made. Under these allegations, the city did more than grant Dobbs a license and lease it a portion of the airport property. It granted Dobbs an exclusive privilege to sell liquor in return for a direct interest in the varying fortunes of the business and thus itself became engaged in the liquor business, contrary to the public policy of this State.

The retail sale of liquor in this State is governed by the Revenue Tax Act. Ga. L. 1937-38, Ex. Sess., supra.

In the enactment of that statute the General Assembly manifested an intention that it "was not merely for revenue purposes but was aimed at regulation and control of the liquor business in the interest of the public, a business generally recognized as

freighted with a peril to the public welfare." *Bernstein v. Peters*, 68 Ga. App. 218, 221 (22 SE2d 614) (Emphasis ours.) That intention is evidenced from the title, "An Act to be known as the 'Revenue Tax Act to Legalize *and Control* Alcoholic Beverages and Liquors'; to provide for the taxation, legalization, *control*, manufacture, importation, distribution, sale and storage of alcoholic beverages and liquors; . . . . to authorize the Revenue Commissioner to make rules and regulations for the . . . *controlling* of the manufacture, sale and distribution of alcoholic beverages and liquors; . . . to provide penalties and punishment for the violation of the terms of this Act; . . . to prohibit certain forms of display and advertisement of spirituous liquors. . ." (Emphasis ours.) The matter in the body of the statute also shows that same intention.

Throughout the various provisions of the statute there is abundant proof that the lawmakers, while legalizing the liquor business under certain circumstances, determined to proceed with extreme caution. The manufacture, sale and distribution of liquor in this State is expressly declared to be a privilege and not a right. Ga. L. 1937-38, Ex Sess., pp. 103, 121; *Code Ann.* § 58-1068. Authority to manufacture, sell and distribute is provided only upon stringent terms and is made subject to strict regulation and control.

That statute empowers municipal corporations to issue annual licenses for the retail sale of liquor within their boundaries. It also gives them ". . . authority to determine the location of any . . . retail business licensed by them" and ". . . full authority to pass on the character, reliability, and other qualities of fitness before issuing such license." Ga. L. 1937-38, Ex. Sess., pp. 103, 111-112; *Code Ann.* §§ 58-1028, 58-1031.

No provision of the statute is more vital than these. Successful regulation and control of the liquor business is dependent upon the proper exercise of this authority by the municipalities of our State.

A pecuniary interest by the municipality in the volume of sales of a particular retail dealer is not conducive to the proper exercise of this authority. The combination of power to license and pecuniary interest in the liquor business creates a conflict

of interest which can only result in abuse of the power to license and in a breakdown in the regulation and control of liquor. Bargaining between the city and prospective licensees over the percentage of gross sales to be paid as rent for the city's property for use as a liquor store would tend to put liquor licenses up for bids, thus defeating the intent and purpose of the Revenue Tax Act.

Sanction for the arrangement is not afforded by the city's charter authority to own and lease real estate. Ga. L. 1874, p. 116. That general authority does not encompass the agreement alleged here.

Count 3 alleged facts which would invalidate the agreement. Therefore, the sustaining of the general demurrer was erroneous.

■ The corporate and individual plaintiffs' assignments of error in case number 22601 present the same issues hereinbefore ruled upon on their cross bill of exceptions in case number 22600, and therefore a ruling on those in case number 22601 is unnecessary.

*Judgment complained of in the main bill of exceptions in case number 22599 affirmed; judgment on cross bill affirmed in part and reversed in part. Bill of exceptions in case number 22601 dismissed. All the Justices concur.*